224 A.2d 380.

STANWOOD A. DEMERS *vs.* GEORGE L. SHEHAB, *Chairman of the Coventry School Committee, et al.*

NOVEMBER 28, 1966.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

418

JOSLIN, J. This civil action was instituted in the superior

court by Stanwood A. Demers of the town of West Greenwich against the members of the school committee of the town of Coventry, the commissioner of education, and the members of the state board of education hereinafter respectively referred to as the committee, the commissioner, and the board. In a home-drawn complaint which suffers from prolixity and volubleness, the plaintiff, who has acted as his own counsel throughout this proceeding, seeks a writ of mandamus commanding the committee to prohibit certain school officers and officials of Coventry from selling and renting musical instruments to pupils on public school premises in violation of G. L. 1956, §16-38-6.[1] In addition he asks that the commissioner and the board be similarly directed on the ground that §§16-1-5(i) and 16-1-4(i) charge them respectively with enforcing the observance of all laws relating to schools and education. In response to the complaint, first the commissioner acting jointly with the board and then the committee moved to dismiss. The case is now here on the plaintiff's appeals from orders granting these motions and denying and dismissing the complaint as to all the defendants.

The first ground of the motions was that original jurisdiction of controversies in public school matters was vested exclusively by chap. 39 of title 16 in the commissioner and the board. We lay that ground aside summarily because the administrative review authorized in that chapter does not exclude other legal remedies. The legislature provided otherwise in §16-39-5. *Izzi* v. *Warwick School Committee,* 82 R. I. 76.

The second ground was that the subject matter of this case had been previously adjudicated by the same parties.

---

1.  "* * * Excepting the sale of school lunches under rules and regulations prescribed by the school committee of the town or city, no article shall be sold or offered for sale to public school pupils or teachers on any public school premises, nor shall any article be sold through the agency of pupils in the public schools."

See *Demers* v. *Collins,* 98 R. I. 312, 201 A.2d 477. In that case over Demers' protest the board sustained the committee's refusal to bar the identical practices which he here seeks to prohibit. Reviewing on certiorari, we did not reach the merits. Instead we decided the case on the procedural ground that Demers was not an aggrieved person within the contemplation of the statutes governing the appellate jurisdictions of the commissioner and the board. Our judgment went only to Demers' standing and not to the basic issue. It obviously is not available as a basis for application of the rule of res judicata. *Jarret Bros. Co.* v. *Carroll Worsted Mills, Inc.,* 56 R. I. 214, 219.

This brings us to the substantial ground of the motions which is whether a cause of action was stated upon which relief could be granted. Although an action to obtain a writ of mandamus, heretofore prerogative in character, is now controlled procedurally in the superior court by Rule 81(d) of its Rules of Civil Procedure, the legal sufficiency of a complaint seeking such relief is still tested by the same substantive standards which have heretofore prevailed. *Hammond* v. *Hull,* 131 F.2d 23; *Kay Ferer, Inc.* v. *Hulen,* 160 F.2d 146; 7 Moore, Federal Practice (2d ed.) ¶81.07, at 4446.

Among those standards none is more firmly established in this state than that which denies the writ of mandamus to a private citizen whose only interest in applying for that writ is to compel public officials to discharge their duties properly and to correct public delinquencies. That doctrine was first voiced by us in *O'Brien* v. *Board of Aldermen,* 18 R. I. 113, where we said at page 115:"* * * it is laid down that a private individual can apply for *mandamus* only where he has some private or particular interest to be subserved or some particular right to be pursued or protected, independent of that which he holds in common with the public at large; and that it is for public officers,

exclusively, to apply for the writ where public rights only are to be subserved." While this rule has been challenged many times, we have, notwithstanding its limited acceptance elsewhere, consistently followed it. *Nolan* v. *McCoy,* 77 R. I. 96; *Dupre* v. *Doris,* 68 R. I. 67; *Boss* v. *Sprague,* 53 R. I. 1.

Although the recital of the *O'Brien* principle poses no difficulty, its application does because what constitutes a particular or special interest sufficient to permit a private individual to enforce a public right or duty is not always obvious. This case illustrates the difficulty.

Here plaintiff in his complaint styles himself "citizen and taxpayer," states that he is the "proprietor of a retail business selling, repairing and instructing [sic] musical instruments," and avers that the allegedly illegal practices cause him grave financial loss, damage his reputation and reflect adversely on his character. The problem is whether these allegations, which we on a motion to dismiss accept as true and construe liberally in his favor, 2 Moore, Federal Practice (2d ed.) ¶12.08, at 2244, give him the prerequisite qualifying special interest.

There are, of course, many school cases. They cover a wide range including those where the issues were constitutional and where the results were of far-reaching political and sociological significance such as the desegregation of public schools, *Brown* v. *Board of Education,* 347 U. S. 483, the recital of daily prayers in the public classroom, *Engel* v. *Vitale,* 370 U. S. 421, and the giving of religious instruction on school premises, *McCollum* v. *Board of Education,* 333 U. S. 203. There are also other school cases where the issues are more earthy and concern only the enforcement of local statutes or ordinances having to do with the admission of a pupil to a particular program, *Realy* v. *Caine,* 220 N.Y.S.2d 857, or the payment of a matriculation fee, *Clax-*

*ton* v. *Stanford,* 160 Ga. 752, or the establishment of a school in a particular district, *Maddox* v. *Neal,* 45 Ark. 121.

While it is true that in all of the foregoing cases the courts at the instance of private individuals directed public officials to comply with their duties under laws relating to public schools, they differ from this case. A common thread runs through them which is not found here. In each of them, and this is what distinguishes them from this case, the suitor was a pupil or someone acting on his behalf, and the law whose enforcement he sought had been enacted for the benefit of a class of which he was a member.

It is on this question of *benefit* that plaintiff's case falters. Obviously the purpose of the statute prohibiting sales to pupils on public school premises is to protect students. It is equally obvious that plaintiff is a stranger to that purpose. It was not the protection of his status as "citizen and taxpayer" or an intention to make secure his economic well-being or a desire to save his reputation or character from sully that motivated the legislature to enact §16-38-6. It was concerned with public school children, not sellers or renters of musical instruments. In those circumstances the incidental damages which he claims to suffer because defendants permitted others to sell or rent musical instruments on public school premises do not qualify as the kind of special or peculiar interests which will entitle him to sue at his own relation for mandamus. *Colorado Paving Co.* v. *Murphy,* 78 F.28; *Fetters* v. *Mayor and Council,* 31 Del. Ch. 338; *Butler* v. *Printing Comm'rs,* 68 W. Va. 493.

While the cases we cite relate to public works contracts rather than to school or educational matters, the principles for which they stand are nonetheless controlling. In each instance the question was whether an unsuccessful bidder could compel compliance with a provision directing that public works contracts be awarded to the lowest responsible bidder. In denying relief on the ground that the applicant lacked standing, the rationale was that the pro-

vision requiring that the award be made to the low bidder had been adopted for the protection of those who would be adversely affected by a wrongful expenditure of public funds rather than for the benefit of disappointed contractors. An application of the same reasoning to this case denies to Demers the special or peculiar interest which under *O'Brien* he must have if he is to qualify as a party plaintiff.

That plaintiff cannot at his own relation obtain a writ of mandamus does not mean that he is remediless. He should seek the intervention of the public officers charged with enforcing the law because "Suits for the public should be placed in public and responsible hands." *O'Brien* v. *Board of Aldermen, supra,* at 116.

Prior to the arguments in this case, each of the defendants moved to dismiss the plaintiff's appeals. We denied those motions without prejudice to the defendants' right to renew them again in the hearing on the merits. They were pressed at that time and they are now denied pro forma.

The judgment appealed from is sustained and the case is remanded to the superior court for further proceedings.

*Stanwood A. Demers,* pro se, plaintiff.

*James F. Murphy, J. Joseph Nugent,* Attorney General, *Joseph L. Breen,* Chief Special Counsel, for defendants.