380 A.2d 960.

HILTON ROSEN *et ux. vs.* JAIME RESTREPO, JR.,
*Tax Assessor for the Town of Lincoln.*

OCTOBER 27, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. The plaintiffs, Hilton Rosen and his wife Faye, reside in and pay taxes to the town of Lincoln. They are before us on their appeal from a grant by a Superior Court justice of the defendant tax assessor's motion to dismiss this civil action, in which the Rosens are asking the Superior Court to "issue its peremptory writ of mandamus" and order the assessor to assess the "Lincoln Mall," a large shopping center complex, in the same manner in which he has assessed the other ratable property in the town.

The trial justice, in granting the dismissal, rested his decision on two grounds. Mandamus, he said, will not lie when the act in issue is one that involves the exercise of the actor's discretion. He also observed that the Rosens lacked standing

to institute the suit because he felt that they were attempting to protect a right that was held in common with the rest of the public at large. We disagree and reverse.

Within recent times, when reviewing a Superior Court mandamus proceeding, we have treated the proceeding as a civil action in which the plaintiff was seeking equitable relief. *Sarni* v. *Meloccaro,* 113 R.I. 630, 324 A.2d 648 (1974); *see also Granger* v. *Johnson,* 117 R.I. 440, 367 A.2d 1062 (1977). In fact, Super. R. Civ. P. 81(d) specifically provides that mandamus proceedings are subject to the rules. Here, the litigants, by their actions, indicated that they too considered this suit as a civil action. The plaintiffs sought admissions of facts from the assessor, who in turn had filed an answer to the complaint and an objection to the request for admissions and, finally, a motion that plaintiffs' request for mandamus be dismissed. Consequently, we will take the *Sarni* approach and view this litigation as a civil action in which plaintiffs are seeking equitable relief.

Turning to the applicable law, one finds that art. I, §2, of the Rhode Island Constitution directs that the burdens of the state be "fairly distributed among its citizens." Conscious of this constitutional mandate, the Legislature since 1855 has declared that all property liable for taxation shall be assessed at its full and fair cash value. We have construed the term "full and fair cash value" to mean that price the property would probably bring in a transaction in a fair market between a willing seller and a willing buyer. *Allen* v. *Bonded Municipal Corp.,* 62 R.I. 101, 105, 4 A.2d 249, 251 (1938). The "full and fair cash value" standard remained unchanged until 1965, when the General Assembly, conscious of what was actually taking place in our municipalities,[1] amended G.L. 1956, §44-5-12, by its enact-

---

[1] In *Socony-Vacuum Oil Co.* v. *French,* 88 R.I. 6, 143 A.2d 318 (1958), both the taxpayer and the tax assessor acknowledged that property in East Providence was being assessed at 80 percent of its full and fair cash value.

ment of P.L. 1965, ch. 115, §1, so that, from 1965 on, tax assessors could assess all property liable to taxation at its full and fair cash value or at a *uniform percentage thereof.*

Admittedly, in *Kargman v. Jacobs,* 113 R.I. 696, 325 A.2d 53 (1974), we acknowledged that an assessor, in determining the fair market value of ratable property, is not bound by any particular formula, but rather he or she is exercising a discretionary act which has been authorized by our state's constitution and delegated in turn by the General Assembly to the various municipal assessors. However, once the assessor has established the property's fair market value, if he or she is assessing at less than 100 percent of value, such an official must comply with the constitutional directive of art. I, §2, and apply the same percentage factor to each piece of property being assessed. Otherwise, we will be confronted with a type of disproportionate taxation which we have previously described as being illegal under Rhode Island law. *Merlino v. Tax Assessors,* 114 R.I. 630, 639, 337 A.2d 796, 802 (1975). Thus, for example, if the assessor is assessing at 70 percent of the fair market value, he has no discretion, but must apply the 70 percent factor to all property within the municipality.

So far as the standing issue is concerned, we need only refer to our holding in *Rhode Island Opthalmological Soc'y v. Cannon,* 113 R.I. 16, 317 A.2d 124 (1974). There, after reviewing this court's past pronouncements regarding standing, we declared that this issue would now be determined by ascertaining whether the person whose standing is challenged alleges that the action in dispute will cause him or her an injury in fact, economic or otherwise. If such an allegation has been made, he or she has standing.[2]

In examining plaintiffs' complaint, we employ the criteria for considering a 12(b)(6) motion which were first

---

[2]For actual application of the *Opthalmological* rule, see *East Greenwich Yacht Club v. Coastal Resources Management Council,* 118 R.I. 559, 376 A.2d 682 (1977).

expressed in the seminal case of *Bragg* v. *Warwick Shoppers World, Inc.*, 102 R.I. 8, 227 A.2d 582 (1967). For the purpose of considering such a motion, the allegations of the complaint are to be taken as true and are to be viewed in the light most favorable to the plaintiff; no complaint shall be dismissed unless it is clear beyond a reasonable doubt that the plaintiff will be unable to prove his right to relief, that is, unless it appears to a certainty that the plaintiff will not be entitled to relief under any set of circumstances which might be proved in support of the claim. When the *Bragg* case is applied to plaintiffs' complaint, the result is obvious.

In their complaint, the Rosens indicate that the assessor has or intends to assess Lincoln Mall at a percentage of its full and fair cash value which is substantially lower than that applied to other property in the town. They also allege that they will be damaged because the taxes they must pay will be greater than if the Lincoln Mall had been valued at the same percentage of its full and fair cash value as the other properties. In substance, the Rosens have complained that the assessor, by applying a different fraction to his assessment of the Mall than he did to the other real estate parcels, has violated his constitutional obligation to fairly distribute the tax burden, and this violation, in turn, affects the plaintiffs where it really hurts the most — in their pocketbooks. They have established their right to be heard.

The plaintiffs' appeal is sustained, the judgment appealed from is vacated, and the case is remitted to the Superior Court for further proceedings.

MR. JUSTICE PAOLINO, with whom Mr. Justice Doris joins, dissenting. For the reasons that follow, I respectfully dissent. In his decision granting defendant's motion to dismiss the plaintiffs' complaint, the trial justice held that

> "the assessment of the value of * * * property for tax purposes and the application thereto of a 'uniform percentage,' is * * * an act which involves judgment and discretion."

and that:

"Therefore, mandamus would not lie."

Further, he held that even if mandamus might lie, the court was bound by our decisions in *O'Brien* v. *Members of The Bd. of Aldermen,* 18 R.I. 113, 115, 25 A. 914, 914 (1892), and *Demers* v. *Shehab,* 101 R.I. 417, 224 A.2d 380 (1966), where in discussing the substantive standards applicable in determining whether mandamus should issue in a particular case, this court spoke as follows:

> "Although an action to obtain a writ of mandamus, heretofore prerogative in character, is now controlled procedurally in the superior court by Rule 81(d) of its Rules of Civil Procedure, the legal sufficiency of a complaint seeking such relief is still tested by the same substantive standards which have heretofore prevailed." *Demers* v. *Shebab, supra* at 420, 224 A.2d at 381-82.

In my judgment the trial justice was correct.

Generally mandamus will issue only where the petitioner has a clear legal right to performance of the act sought, the respondent has a clear ministerial duty to perform it without discretion to refuse, and the petitioner has no other plain and adequate remedy at law. It is not generally used to establish such a right and it is usually denied where such an alleged right is either uncertain or doubtful. *Sun Oil Co.* v. *Macauley,* 72 R.I. 206, 210, 49 A.2d 917, 919 (1946).

It is clear from what the court said in *Sun Oil Co.* v. *Macauley, supra,* that mandamus will not lie to compel a public official to perform a discretionary act. The relief sought by plaintiffs in the case at bar does not involve a ministerial act but rather the exercise of discretion delegated to tax assessors by the Legislature under §44-5-12, which provides that tax officials must assess all real property subject to taxation "at its full and fair cash value, or at a

uniform percentage thereof * * * ." As the trial justice correctly noted in his decision:

> "[I]n making this argument, the plaintiff forgets or overlooks the essential nature, that in making an assessment under guidelines, it is obviously impossible to perform the function without the exercise of discretion and judgment. How much is the property worth in the first instance? What is one hundred per cent of its full and fair cash value, which must be determined? Then to that determination, which is obviously one of discretion and judgment, the uniform percentage can be applied."

In discussing the question of methods used in the valuation of real estate, we spoke as follows in *Kargman v. Jacobs*, 113 R.I. 696, 704, 325 A.2d 543, 547-48 (1974):

> "The trial justice in discussing the assessor's use of the cost of reproduction standard observed that the power to tax is vested in the General Assembly, which shall provide for ' * * * making new valuations of property * * * in such manner as they may deem best.' R.I. const. art. IV, §15. The General Assembly in turn has delegated this authority to the assessors of each municipality. Section 44-5-11. They are authorized to determine value in the same manner as the Legislature might have, in this instance, as the East Providence assessor deems best. He is given the choice as to which method of valuation he will employ.
>
> * * *
>
> "It is our belief that the tax assessor is not bound by any particular formula, rule or method as he seeks to ascertain the fair market value of real estate. His choice of one of the recognized methods of valuation is simply an exercise of the discretion referred to in our constitution."

Thus, it is clear from what we said in *Kargman* v. *Jacobs, supra,* that while an assessor may be compelled to value property pursuant to a statutory standard, mandamus will not lie to compel the assessor to use a particular method. In the case at bar the crux of plaintiffs' complaint focuses on the method used to make the valuation of the Lincoln Mall property rather than on his failure to assess property at its full and fair cash value or a uniform percentage thereof. As plaintiffs point out in their brief, if defendant tax assessor had based his assessment on the documentary stamps on the deed, a higher assessed valuation of just over $7,350,000 would have resulted, with a tax of more than $410,000 at current rates. Under the actual assessed valuation, however, the expected tax revenue from the Lincoln Mall was announced to be around $200,000. The plaintiffs' present action is based on their claim that the valuation placed on the property in question was contrary to established practices and procedures. They challenge the method of valuation used by the tax assessor and therefore brought the instant action to compel the tax assessor to use a method of valuation they claim is preferable. To grant their request would be to compel a discretionary act. This would do violence to long-established standards governing the use of the writ. *Newman* v. *Mayor of Newport,* 73 R.I. 435, 436, 57 A.2d 180, 181 (1948).

Nor is there any merit to plaintiffs' claim that defendant tax assessor had no discretion to refuse to assess all property alike. As this court said many years ago in *Allen* v. *Bonded Mun. Corp.,* 62 R.I. 101, 105, 4 A.2d 249, 251 (1938):

"The constitutional requirement of fairness in taxation is met if a taxing law demands that it be applied with substantial uniformity without discrimination throughout a class of property set apart for separate taxation."

The Lincoln Mall property, by its very nature, is a unique piece of property. Section 44-5-12 states:

"All property liable to taxation shall be assessed at its full and fair cash value, or at a uniform percentage thereof, not to exceed one hundred per cent (100%), to be determined by the assessors in each town or city * * *."

There is nothing in §44-5-12 which prescribes the method of valuation to be used by the tax assessor in assessing the Lincoln Mall or any other property in the town; nor is there any language in the statute directing the tax assessor to use the same method for all the property in the town. Rather, the statute clearly prescribes that the assessment is to be made by the tax assessor and that the value is to be determined by him on the basis of its full and fair cash value, or a uniform percentage thereof. The method of arriving at such assessment is clearly left to the discretion of the tax assessor, with the express mandate that it be at full and fair cash value or a uniform percentage thereof, not that all property be assessed by using the same method of assessment.

Thus, the trial justice was warranted in holding that the assessment of the value of property for tax purposes and the application thereto of a "uniform percentage" was an act involving the exercise of judgment and discretion, and that therefore mandamus would not lie.

*Oster, Fay, Groff & Prescott, George M. Prescott,* for plaintiffs.

*John Quattrocchi III,* Town Solicitor for the Town of Lincoln, for defendant.